WILLIAMS & FLASH COMPANY vs. J. PERRY CARPENTER.

MAY 29, 1911.

PRESENT: Dubois, C. J., Johnson, Parkhurst, and Sweetland, JJ.

(1)  *Contracts.  Guaranty.  Offer.*

Defendant, a stranger to the plaintiff and the father of the president of its corporate debtor, wrote to plaintiff explaining the condition of the debtor, and the status of plaintiff's account, and gave his opinion that time was needed and expressed the hope that plaintiff would be liberal with debtor, adding the statement "and you will get every dollar due you.   Understand that your claim will be in any event preferred."   "In either case it calls for time which I feel you will agree with me you should grant them under the circumstances if you can be *assured* you are not to suffer by the delay. Trusting you will consider this carefully before taking any step that would add to their further embarrassment and with my *assurance* that your interests will be protected *by them*."

Plaintiff replied thanking defendant for the information and stated that a proposition had been written to defendant's son which he would doubtless submit to defendant, which proposition was a suggestion that the corporation note with endorsement of defendant, among others, be given plaintiff.

Plaintiff claiming that defendant by his letter guaranteed its claim brought suit to recover on such guaranty:—

*Held*, that the letter could not be construed as such a guaranty but even if sent and received as an offer of guaranty, it was not accepted by plaintiff who submitted a proposition thereafter to the son of defendant, which was never accepted.

ASSUMPSIT.   Heard on exceptions of plaintiff and overruled.

DUBOIS, C. J.   This is an action of assumpsit on an alleged contract of guaranty.   The case was brought and tried in the Superior Court before the presiding justice thereof, sitting without a jury, who found for the defendant in the following decision:   "It does not seem to me that this amounts to a guarantee to pay the debt of another.   It is more advisory and by way of assurance than anything else.   Its strongest expressions are those expressions that ' time is what they need;' and ' will get every dollar due you;' and ' my assurance your interest will be protected by them.'   It does not seem to me that that clearly expresses any promise to pay the debt of another.   It is more in the way of advice, and expressions of opinion on the part of the writer of the letter.   For that reason I will give decision for the defendant."

The plaintiff duly excepted to the aforesaid ruling and the case was heard by this court upon the plaintiff's bill of exceptions.

The plaintiff, a corporation doing business in the city and state of New York, had furnished goods to and was a creditor of the Eastern Oil & Supply Co., also a corporation doing business in the city of Providence, R. I., in the sum of $2,902.26 for goods theretofore sold and delivered.   October 18, 1907, the Eastern Oil & Supply Co., wrote the following letter to the plaintiff corporation which was duly received by it on the following day:

" WILLIAMS & FLASH CO.,
    80 Pearl Street,
        New York City.

GENTLEMEN:—Yours in regard to our account at hand, and in reply beg to make the following statement of our affairs, as we have found them after a thorough examination. Mr. Sayles who was treasurer and manager of our Company we find has taken every thing he could lay his hands on, and through fraudulent entries on our books, collected and used the monies that we supposed was being paid to our creditors. When we discovered that things were wrong, our books showed that we had a cash balance more than sufficient to pay every outstanding obligation. Enquiry at the bank showed we had a balance of only three hundred and fifteen dollars ($315.00). An audit of our books also showed that he had collected large amounts that still stood to our credit, leaving our outstandings very much less than we had supposed. After my visit to New York we felt assured that you would be willing to arrange with us in such a way that might secure your claim in full, and with that end in view, we took steps to dispose of Mr. Sayles as best we might. Knowing that it would be impossible to continue the business with him in any way connected, and the only thing we could see our way clearly to do was to make him surrender his stock and get out. We could have prosecuted, but were not in a position to dictate as he was a defaulter to another corporation of which he was treasurer, to the amount of fifteen hundred dollars ($1,500), and to four individuals to the extent of fifteen thousand dollars ($15,000.)

" While we admit the justice of your claim, and the fact that as a corporation we are liable for the acts of our treasurer, we also feel that it is a hardship to punish the other innocent officers for his crime. He had collected the money for the oil you had consigned, and the bills had been turned over to him to pay and he had claimed to have paid them, and we had no reason to suppose he had not, for as stated above our books showed him to have ample cash to do so.

"Now that we have disposed of him, we are arranging to put in an additional capital and continue.   Our condition is practically this, we have good accounts receivable of about $2,500.00, stock $2,500.00 and cash in the bank of about $500.00, we owe about $5,500.00.   On our accounts and stock in ware-house we could secure you, so you could be paid in full.

"Should you however, feel that you must take other steps, then you would prevent our carrying out of our plans—force us into liquidation and punish the innocent members of our corporation who are already losers by Mr. Sayles for the amount of their stock, and a very large amount besides.   This adjusting of our affairs we cannot consummate in a day—consequently we could not settle with you as you propose, two thousand cash ($2,000) cash at once, and balance in ten days,—it will be necessary absolutely, that we be given a reasonable time too, and as a business proposition, to business men, when you consider our condition and the causes, would not some assurance that your account will be paid in full, with some security on our account, or ware-house receipts for our clean salable stock, satisfy you better than our prosecution for the acts of Mr. Sayles, who has robbed us of cash for more than twice the amount of your account.

"We are entirely in your hands, and if given the necessary time we can continue and pay you in full.   We will await your reply, and if you are favorably disposed, would like to meet you either here or in New York and arrange this so that we can both be fully secured.

Very truly yours,

Eastern Oil & Supply Co.,

Fred L. Carpenter,

*President and General Manager.*"

On the same day the defendant sent the following letter to the plaintiff:

"THE WILLIAMS & FLASH CO.,

New York, N. Y.

GENTLEMEN:—I trust you will pardon me for writing you in reference to the Eastern Oil & Supply Co. of this city of which my son is Pres. With an expert accountant I have just completed an audit of their books and understand just the status of your account. Your goods were sold by Mr. Sayles either C O D or with Draft attached and he took the money and claimed that he had paid you which of course was false. Mr. Sayles was not only a defaulter to the Eastern Oil for some $7000. but to the Gilbert Parker Co for $1400. to my son for $2200. furnished by myself, to two other parties $3000. and to my self for a very large amount. The boys as I call them had a nice little business started which he has ruined unless some one helps them out. I see no reason why your account cannot be paid in full but it will need a little time to adjust their affairs and I trust you may see your way to be liberal with them when you consider that the remaining stockholders are innocent as Mr. Sayles had their full confidence and was Manager and Treas. Time is what they need and you will get every dollar due you. Understand that your claim in any event will be preferred. Their other creditors are disposed to give them all the time necessary. This defalcation of course wipes our their stock and leaves two ways out for them—one to make an assessment on the stock and all contribute, or if my son has to look to me to help him out you could not expect me to furnish capital for the other stockholders. They hold a meeting tomorrow or Monday and if the other parties do not care to furnish more capital then we have another plan. In either case it calls for time which I feel you will agree with me you should grant them under the circumstances if you can be assured you are not to suffer by the delay. You are business men like myself and every little while I have similar cases come up in my own business, and I never feel that I ought to sacrifice men so long as my money is in sight and a little patience will get it. Trusting you will consider this carefully before taking any step that

would add to their further embarrassment, and with my assurance that your interests will be protected by them.

I am, very truly yours

J. PERRY CARPENTER."

The plaintiff acknowledged the receipt of each of these letters and thereto made the following replies:

"NEW YORK Oct 19, 1907.

"EASTERN OIL & SUPPLY CO.,

Providence R. I.

GENTLEMEN:—We have your favor of the 18th inst., which has our careful attention.

What you state sounds to us fair and reasonable and we are not at all disposed to push you to the wall or inflict any unnecessary hardship. On the contrary, you certainly have our sympathy under the circumstances.

To help you out in this matter, we will make you the following proposition, that you give us a note of your corporation, endorsed by your Mr. Carpenter's father and himself personally, and by one of Mr. Sayles' relatives, either his mother, his father-in-law or his grandfather, attaching to this note the warehouse receipt for your stock, as you suggest, making this note for thirty (30) days, or if that's not time enough for you, make it 60 days.

It seems to us that this certainly would be a fair proposition and should think that Mr. Sayles' relatives would be willing to give their endorsement, as we certainly have it in our power, if we so elected, to land him in penitentiary. We feel a good deal like doing it, too, as we feel that we have been so outrageously swindled by him.

We would be very glad to meet your President or his father, or both, here at any time at your early convenience, as we would like to have the matter settled up promptly. We are making this proposition because we feel that you are dealing fairly and

squarely with us now and we wish to do anything reasonable to help you.

Yours truly,

THE WILLIAMS & FLASH COMPANY,

E. FLASH Jr. Vice Prest."

"NEW YORK Oct. 19th, 1907.

"MR. J. PERRY CARPENTER,

   c/o Messrs. Ford and Carpenter.

   Providence, R. I.

DEAR SIR:—We have your favor of 18th inst. and beg to thank you for the information therein.

We have not the slightest desire to push the Eastern Oil & Supply Co. to the wall; on the contrary, are willing to do anything we could reasonably be expected to do, to help them out and let them got on their feet again, and even afterwards to continue to do business with them, as we will say frankly that when your son, Mr. Carpenter, called upon us we were favorably impressed with him as being manly, straightforward and honest. We have written him to-day a proposition which he will doubtless submit to you, and will be glad to see him or you, or both of you, at any time it might suit your convenience to call upon us here in the near future.   The writer cannot very well leave New York now, owing to press of business.

Very truly yours,

THE WILLIAMS & FLASH COMPANY,

E. FLASH JR. Vice Prest."

Subsequently the following correspondence passed between the parties:

"NEW YORK Oct. 28th, 1907.

"MR. J. PERRY CARPENTER,

   c/o Messrs. Ford & Carpenter.

   Providence, R. I.

DEAR SIR:—Referring to your favor of 18th inst. and to our answer thereto dated 19th inst., we were very much surprised

to receive a call on the 25th inst. from Mr. O. F. Gallagher, attorney at law, stating that the Eastern Oil & Supply Co. were going into bankruptcy unless we were willing to accept about 50 cents on the dollar for our claim against them.

This is *entirely* at variance with your above letter, in which you gave us *positive assurance that our interest would be protected* and we would like to ask you now what you propose to do about it, if we give reasonable time, under proper security, for the settlement of this debt?

We would appreciate your prompt reply.

We have consulted our counsel here in the matter, but before taking any legal steps, we feel like hearing further from you. We certainly do not intend to accept any compromise of 50 cents on the dollar for money that has been stolen from us, and for which the law gives a remedy.

Very truly yours,

THE WILLIAMS & FLASH COMPANY,

E. FLASH JR. Vice Prest."

"PROVIDENCE, R. I. Oct 29th 1907.

"THE WILLIAMS & FLASH CO
        New York N Y

GENTLEMEN:—Yours of 28th inst at hand and contents noted. Understand I am in no way connected with the business of the Eastern Oil & Supply Co and in no way responsible for their debts. When I wrote you a personal letter on the 18th inst. apparently they were in a solvent condition. However when they started to verify their Book accounts they found that a large amount that appeared to be due them had been collected and not reported. That the stock in Store house did not tally with their stock sheets and that they were hopelessly insolvent. Then before they could take any steps to secure aid came your letter calling for a short note to be indorsed by people who you named but who were not interested in their affairs neither under the circumstances could they be. Personally I resented your position and advised as their best course to consult some

good Attorney and be governed by his advice.   There my connection with the affair ceased.   In regard to what you propose to do or not, that is your own affairs not mine.   In regard to the statements you made to Mr. Gallagher in your office—so far as they concern myself—and the threats implied in your letter, I think after a little deliberation you will decide to have been unwise and will regret.

If your counsel advise you there is a word in my former letter where I assume the responsibility for the debts of anybody, then I would suggest you dismiss him and make a change at once.   After 35 years of experience I am too old not to know my legal rights, or to be forced or bullied into such a false position as you would apparently attempt.

Personally again I regret for your sake that you should have been advised to write me in the manner and tone you have, as I believe it to be contrary to your own better judgment.

Regretting the necessity of writing you thus plainly, I am

Very truly yours

J PERRY CARPENTER."

"PROVIDENCE, R. I. Oct 31st 1907.

"THE WILLIAMS & FLASH Co
    New York N Y

GENTLEMEN:—In reply to yours of the 29th inst., can only repeat my position as stated in my letter of 29th inst to you. If you wish to discuss this matter further with me, it must be from a different standpoint, leaving out its personal and objectionable features, so far as they apply to myself.

No one regrets this unfortunate affair with its attendant losses more than myself.

My losses by this scoundrel have been heavy, and my pride somewhat humbled, but my personal honor, and integrity, are not at stake at this time, and are not being questioned by people who have known me all my life and know me best.

Very truly yours

J PERRY CARPENTER."

And still later counsel for the plaintiff wrote to the defendant as follows:

"PROVIDENCE, R. I. December 4, 1907.

"J. PERRY CARPENTER, *Esq.*,
Providence, R. I.

DEAR SIR:—The Williams & Flash Company have referred to me the matter of their claim against the Eastern Oil and Supply Company guaranteed by you in your letter to Williams and Flash Company dated October 18, 1907. · As bankruptcy proceedings are pending against the Eastern Oil and Supply Company, commenced at the instance and in the interest of the Eastern Oil and Supply Company, as shown by the fact that the petitioning creditors appear on the record by the attorney of the Eastern Oil and Supply Company, Williams and Flash Company consider that the time has come to require of you a performance of your contract of guaranty, and I am instructed to demand that you pay the claim guaranteed by you, Williams and Flash Company hereby offering to transfer and assign to you their claim against Eastern Oil and Supply Company whenever you perform your contract.

Very truly yours,

C. M. VAN SLYCK."

(1)    The plaintiff claims that the defendant in his letter of October 18, 1907, hereinbefore set forth, guaranteed its claim against the Eastern Oil & Supply Company. A brief analysis of the contents of the letter may be useful in the present consideraation. It purports to come from a stranger to the plaintiff, who introduces himself with an apology, as the father of the president of its corporate debtor. It continues with an explanation of the manner in which the .writer has arrived at an understanding of the status of the creditor's account. Information is offered that the goods of the creditor had been sold and the proceeds of the sale together with other large sums of money had been appropriated by a defaulter and the prophesy is ventured that the "boys nice little business" will be ruined

unless some one helps them out.  The writer sees no reason why the account cannot be paid in full but gives his opinion that time will be needed, and hope is expressed that the creditor will be liberal with the debtor.  The necessity for time is again alluded to and to this is added the statement "and you will get every dollar due you.  Understand that your claim in any event will be preferred."  Reference is made to the disposition of the debtor's other creditors to give time.  The effect of the defalcation upon the stock is pointed out and one method of procedure, by assessment, in which all stockholders should contribute, is suggested, but the writer in this connection remarks that if his son has to look to him for help he could not be expected to furnish capital for other stockholders.  The suggestion is made that if this plan fails they have another, but that either plan calls for time which the writer feels that the creditor will agree with him should be granted if it could · be assured it was not to suffer by the delay.  The hope is expressed that careful consideration by the creditor will precede any steps taken to further embarrass the debtor and the letter concludes with the writer's assurance "that your interests will be protected by them."  It is true that the words "assured" and "assurance" are used in the letter, but the question at once arises,—were they used in a technical sense?  It is common knowledge that letters sometimes conclude with profound assurance of most distinguished consideration.  Such might be said to contain a guaranty of the politeness of the writer, but hardly of anything else.  Considered with their context, what do they mean?  Take the sentence in which the word *assured* appears:  "In either case it calls for time which I feel you will agree with me you should grant them under the circumstances if you can be *assured* you are not to suffer by the delay."  This means no more than if you can be satisfied or convinced, that you are not to suffer by the delay.  Even if it could be held that the word meant "guaranteed against loss by the delay," it is not even an offer to give such a guaranty, it is merely the statement of an impression which the writer claims to have.  The word "assurance" occurs in the final

·sentence of the letter: "Trusting you will consider this care fully before taking any steps that would add to their further .embarrassment, and with my *assurance* that your interests will be protected *by them.*

I am, very truly yours."

Did the writer thereby intend to guarantee the payment of the claim of the plaintiff? He does not say so. He desires to convince the plaintiff of his firm belief that its debtor will protect its interest. But it is important not only to determine what the defendant meant by his letter but also what the plaintiff understood him to mean thereby, and its actions at or about the time of the reception of the letter may speak louder than its words thereafter. If the letter was sent and received as a tender or offer of guaranty and in that respect was entirely ;satisfactory to the plaintiff, was the same promptly accepted? Did the plaintiff forthwith write to the defendant and say: your assurance or guaranty of overdue account in consideration of further time for payment of the same is hereby accepted, how much time do you want, or anything like that? No, nothing of the sort. On the contrary it wrote and thanked the ·defendant for the information contained in his letter, alluded to the favorable impression made upon it by the son of the ·defendant and mentioned the fact that a proposition had been written to him which he would doubtless submit to the defendant. Was the proposition submitted an acceptance of the guaranty of the defendant? Not at all. As already appears it was: "that you give us a note of your corporation, endorsed by your Mr. Carpenter's father and himself personally, and by ·one of Mr. Sayles' relatives, either his mother, his father-in-law or his grandfather, attaching to this note the warehouse receipt for your stock, as you suggest, making this note for thirty (30) days, or if that's not time enough for you, make it 60 days." So far as appears this is the only proposition ever made in this behalf by the plaintiff, and it was never accepted. The position now taken by the plaintiff, that the defendant guaranteed its claim against the Eastern Oil & Supply Co., is evidently

:an afterthought. For aught that appears the minds of the parties never met on the subject. The burden of proof to show the existence and breach of a contract of guaranty is upon the plaintiff who has utterly failed to sustain the same. In these circumstances the decision of the Superior Court was clearly right.

The plaintiff's exceptions are therefore overruled and the case is remitted to the Superior Court with direction to enter judgment for the defendant.

*C. M. Van Slyck, Frederick A. Jones,* for plaintiff.

*William A. Spicer, Jr., Frank H. Swan, Edwards & Angell,* for defendant.